## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

LEROY CARMAN, JR.                    :

    Plaintiff                    :

    v                    :          Civil Action No. WMN-05-820

RAZAAK ENIOLA, M.D., *et al.*                    :

    Defendants                    :
o0o

## MEMORANDUM

Pending in the above-captioned civil rights action is Plaintiff's Motion for Preliminary

Injunction and Defendant's Motion to Dismiss or for Summary Judgment.[1] Papers No. 22 and

20.  Plaintiff has filed a Response in Opposition to the Motion and Defendants have filed a Reply

thereto.  Papers No. 31 and 35.  Upon review of the papers filed, this court finds a hearing in this

matter unnecessary.   Local Rule 105.6 (D. Md. 2004).  For the reasons set forth below,

Plaintiff's Motion for Preliminary Injunction shall be denied and Defendants' Motion to Dismiss

or for Summary Judgment, construed as a Motion for Summary Judgment shall be granted.

### Background

Plaintiff, a 53 year-old prisoner at Eastern Correctional Institution (ECI), suffers from a

condition known as Leg-Calve Perthes Disease (LCPD), hypertension, allergic rhinitis,

depression and sleep apnea.  He claims he has not received proper treatment for his LCPD,

which is a disease that occurs in children, affecting the hip joint and resulting in a deformity of

---

[1] Also pending is Plaintiff's Motion for Default Judgment.  Paper No. 26.  Because Defendants
did not fail to file a timely response to the Complaint, the motion will be denied.

the femoral head.[2]  Specifically, Plaintiff asserts that the pain caused by the condition has

progressively worsened over the past year.  Paper No. 1 at p. 5.  He claims that the medication he

has been provided only dulls the pain, and that he cannot sit on hard surfaces or for more than

twenty minutes.  *Id.*  Plaintiff states he has reported to medical staff that he suspects something is

wrong with his right hip and knee, but he was informed that an x-ray taken in 2001 showed that

there was no marked change in the damage.  *Id.*  Plaintiff claims that on March 23, 2004, when

he reported to sick call to renew his anti-inflammatory medication, he asked a nurse to help him

get diagnostic treatment to find out what is wrong with his hip, but she refused.  *Id.*  He further

claims that the nurse was reluctant to refill his medication  *Id.*  Plaintiff alleges that the only

treatment he is being provided are attempts at alleviating his pain without addressing the

underlying problem. *Id* .at p. 6.  He claims that, as a consequence, the condition is worsening and

causing problems with his back and knees. *Id.*   He further contends that the pain he experiences

is constant and intense.  *Id.*

On August 17, 2005, Plaintiff filed an amended complaint.  Paper No. 11.  In the

amended complaint Plaintiff alleges that, in addition to the alleged inadequate medical care he

has received for his LCPD, he discovered that he also suffers from "borderline cardiomegaly

(enlarged heart), prominent broncholinear markings in the lower lung fields, chronic bronchitis,

discoid atelectasis, (incomplete expansion of a lung or portion of a lung) and interstitial lung

disease."  *Id.* at p. 2.  Plaintiff alleges he discovered that he has these disorders after chest x-rays

were ordered for his complaints of shortness of breath and waking up at night after he stopped

---

[2]  The cause of the disease is unknown and there is no cure.  If efforts made during childhood to
improve the shape of the deformity are unsuccessful, treatment in adulthood is limited to pain
management.  Paper No. 20 at Ex. 3, p. 2.

breathing.  *Id*.  Plaintiff asserts that he should have been provided with treatment for these

conditions, but was not.  He further claims that Defendant Eniola prescribed a continuous air

pressure (C-PAP) machine in November, 2002, but the machine, for treatment of sleep apnea,

was never provided.  *Id*. at p. 8.  Plaintiff contends that his conditions are not being treated in an

effort to reduce costs by the medical care contractor.  *Id*.

### Injunctive Relief

The legal standard to apply in considering an application for injunctive relief is set forth

in *Blackwelder Furniture Co. v. Seilig Manufacturing Co.*, 550 F.2d 189 (4th Cir. 1977), which

holds that injunctive relief may only be granted if the movant can demonstrate: (i) the likelihood

he will be irreparably harmed if the preliminary injunction is denied; (ii) the likelihood that

defendant/respondent will not be harmed if the requested relief is granted; (iii) the likelihood that

he will succeed on the merits; and (iv) that the public interest will be served if the injunction is

granted.  *See  Blackwelder*, 550 F.2d at 195-96; *see also Ciena Corp. v. Jarrard*, 203 F.3d 312,

322-23 (4th Cir. 2000).

In his Motion for Preliminary Injunction, Plaintiff seeks an Order from this court

requiring Defendants to perform an MRI on his hip, send him to an outside orthopedic specialist

for evaluation, and require any recommended surgery.  Paper No. 22.  Defendant Eniola asserts

that Plaintiff is currently receiving conservative treatment for his LCPD which includes follow-

up examinations, medication, bed rest, and education on lifestyle changes, such as weight loss, in

an effort to improve his condition.  Paper No. 20 at Ex. 3, p. 2– 3.  Defendant Eniola also states

that neither an MRI or an evaluation by an orthopedic specialist is medically necessary at this

time.  *Id*.  There is no indication that Plaintiff will be permanently denied the particular course of

treatment he requests.  Indeed, given the long history of medical care evident in this case, it appears unlikely that the care sought will be denied in the event it becomes necessary. Accordingly, Plaintiff has failed to make a showing that irreparable harm will likely occur if injunctive relief is not granted.  The motion will, therefore, be denied.

### Standard of Review

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  see Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.  *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979)；  *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950).  The moving party bears the burden of showing that there is no genuine issue of material fact.  see Fed. R. Civ. P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. *see Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 437 (4th Cir. 1998).  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 323.  Thus, on those issues on which the nonmoving

4

party will have the burden of proof, it is his or her responsibility to confront the motion for

summary judgment with an affidavit or other similar evidence.  *see Anderson*, 477 U.S. at 256.

In *Celotex*, the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear
> the burden of proof at trial on a dispositive issue, a summary
> judgment motion may properly be made in reliance solely on the
> "pleadings, depositions, answers to interrogatories, and admissions
> on file."  Such a motion, whether or not accompanied by affidavits,
> will be "made and supported as provided in this rule," and Rule
> 56(e) therefore requires the nonmoving party to go beyond the
> pleadings and by her own affidavits, or by the "depositions,
> answers to interrogatories, and admissions on file," designate
> "specific facts showing that there is a genuine issue for trial."

*Celotex*, 477 U.S. at 324.  However, "'a mere scintilla of evidence is not enough to create a fact

issue.'"    *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting *Seago v.*

*North Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C. 1966), *aff'd*, 388 F.2d 987 (4th Cir.

1967)).  There must be "sufficient evidence favoring the nonmoving party for a jury to return a

verdict for that party.  If the evidence is merely colorable, or is not significantly probative,

summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50 (citations omitted).

**Analysis**

Supervisory Defendants

Section 1983 liability on the part of the supervisory defendants requires a showing that:

(1) the supervisory defendants failed promptly to provide an inmate with needed medical care,

(2) that the supervisory defendants deliberately interfered with the prison doctors' performance,

or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison

physicians' constitutional violations. *see Miltier v. Beorn*, 896 F. 2d at 854 (internal citations

omitted); *see also Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir.1984) (supervisory liability for an

inmate's beating by prison guards).   Plaintiff's claims against Commissioner Sizer, Warden

Kupec and Warden Green are based on his assertion that he requested their intervention in

obtaining the medical care he views as appropriate for his condition and their failure to intercede

on his behalf.  Paper No. 1 at p. 6.  Defendants Sizer, Kupec and Green have not filed a Motion

to Dismiss in this case: however, this court is empowered by  28 U.S.C. § 1915(e)(2) to dismiss a

claim "at any time if the court determines that– (A) the allegation of poverty is untrue; or (B) the

action or appeal– (i)is frivolous or malicious; (ii) fails to state a claim on which relief may be

granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  *See*

*also Cochran v. Morris*, 73 F. 3d 1310, 1315 (4th Cir. 1995).   It is clear from the pleadings filed

that there is no basis for a finding of supervisory liability as to Defendants Sizer, Kupec and

Green and the claims raised against them shall be dismissed.

Medical Defendants

In order to state an Eighth Amendment constitutional claim for denial of medical care,

Plaintiff must demonstrate that Defendants' acts (or failures to act) amounted to deliberate

indifference to his serious medical needs.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  In

essence, the treatment rendered must be so grossly incompetent, inadequate, or excessive as to

shock the conscience or to be intolerable to fundamental fairness.  *see Miltier v. Beorn*, 896 F.2d

848, 851 (4th Cir. 1990) (citation omitted).  "Deliberate indifference may be demonstrated by

either actual intent or reckless disregard."  *Miltier*, 896 F.2d at 851.  Reckless disregard occurs

when a defendant "knows of and disregards an excessive risk to inmate health or safety; the

[defendant] must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists and he must also draw the inference."  *Farmer v. Brennan*,

511 U. S. 825, 837 (1994).  Thus, a health care provider must have actual knowledge of a serious

condition, not just knowledge of the symptoms.  *see Johnson v. Quinones*, 145 F.3d 164, 168 (4th

Cir. 1998).  Furthermore, mere negligence or malpractice does not rise to a constitutional level.

*see Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361

(D. Md. 1986).

"'[B]ecause society does not expect that prisoners will have unqualified access to health

care,' the objective component of an Eighth Amendment claim based on deprivation of medical

attention is satisfied only if the medical need of the prisoner is 'serious'".  *Shakka v. Smith*, 71

F.3d 162, 166 (4th Cir. 1995) (quoting *Hudson v. McMillian*, 503 U. S. 1, 9 (1992)).  "[A]n injury

or condition is 'serious' only if it is 'life threatening or poses a risk of needless pain or lingering

disability if not treated at once.'"  *Anderson-El v. O'Keefe*, 897 F. Supp. 1093, 1096 (N.D. Ill.

1995) (quoting *Davis v. Jones*, 936 F.2d 971, 972 (7th Cir. 1991)).  In determining

whether an alleged deprivation of medical care amounts to a constitutional violation, courts must

consider the severity of the medical problem, the potential for harm if medical care was denied or

delayed, and whether such harm actually resulted from the lack of medical attention.  *see Burns v.*

*Head Jailor of LaSalle County*, 576 F. Supp. 618, 620 (D.N. Ill. 1984) (citation omitted).

Defendants have submitted Plaintiff's medical records documenting the treatment he has

received for his LCPD as well as his sleep apnea.  Paper No. 20 at Ex. 1.  Those records establish

that Plaintiff's complaints regarding pain in his hip and knee have been evaluated and treated on a

number of occasions.

On February 5, 2003, in response to Plaintiff's complaint that he was suffering from right

hip pain with difficulty bearing weight, an x-ray was ordered and he was placed on bed rest. *Id*. at

p. 48.  On February 11, 2003, the x-ray of Plaintiff's hip was performed and revealed no fracture

or dislocation, nor any changes in the deformity since a previous x-ray taken in July, 2000.  *Id*. at

p. 101.  The same day, the x-ray results were discussed with Plaintiff, and he was advised to

continue taking Tylenol for the pain.  *Id*. at p. 4.  On March 6, 2003, Plaintiff returned with

complaints of hip pain and was evaluated by Dr. Eniola.  *Id*. at pp. 5–6.  Although the exam

revealed tenderness in the area, no swelling or deformity was noted and Plaintiff was advised to

continue taking pain medication.  *Id*.

When Plaintiff began complaining of pain in his neck and shoulder in August, 2003, an x-

ray was performed which revealed osteoarthritic changes in his shoulder.  *Id*. at p. 55 and 102.

Treatment for that condition included a prescription for Naproxsyn, Vistaril and Robaxin.  *Id*. at

p. 33.  The medication provided for Plaintiff's neck and shoulder pain also helped to alleviate

pain in his hip. *Id*.  During visits to the medical unit on August 18 and October 9, 2003, for

treatment and evaluation of neck and shoulder pain, Plaintiff voiced no complaints regarding hip

pain.  *Id*. at pp. 8 – 9.  Additionally, on November 10, 2003, and February 6, 2004, when Plaintiff

was seen by medical staff in the chronic care clinic for treatment of his hypertension, he did not

complain about hip pain.  *Id*. at p. 10.

Due to the side effects associated with long term use of Naproxsyn, Plaintiff's

prescription was discontinued on April 14, 2004, and he was given Tylenol in its place.  *Id*. at p.

36.  On May 4, 2004, Plaintiff was seen by a doctor in the chronic care clinic where he reported

an eight pound weight gain due to a decreased ability to walk which he attributed to his hip pain.

*Id*. at p. 11.  Despite the complaint, Defendants allege that Plaintiff informed the nurse

practitioner that he was able to walk for forty-five minutes without difficulty, did push-ups for

exercise, and believed he could cut grass.  *Id*. at p. 12.  Based on those assurances, Plaintiff was

medically cleared for moderate activity.  *Id*.  Plaintiff's chronic arthritis and pain management

issues were again evaluated by a physician assistant on June 22, 2004, when Plaintiff reported

that the Vistaril he was taking was not helping his pain.  *Id*. at p. 12.  Plaintiff was referred to a

doctor, but there is no indication that he was seen by a doctor until July 26, 2004, when he

submitted a sick call slip requesting attention for his LCPD.  *Id*. at p. 65.  Plaintiff requested a

renewal of his Naproxsyn prescription, and medical staff complied with the request.  *Id*. at p. 12.

Plaintiff was, however, advised of the side effects of long term use of the medication and told to

use it only as needed to decrease the possibility of those side effects.  *Id*.

On October 12, 2004, Plaintiff was evaluated by Dr. Eniola for chronic pain management,

and, according to Defendants, Plaintiff voiced concerns regarding the side effects of Naproxsyn.

*Id* at p. 13.  Based on those concerns, Plaintiff's prescription for Naproxsyn was discontinued and

he was provided with Tylenol.  *Id*.  On January 5, 2005, Plaintiff was again seen by medical staff

for his complaint of increased shoulder pain.  *Id*. at p. 67.  Plaintiff requested a referral to an

orthopedic specialist, but was told to continue using Tylenol for his pain.  *Id*.

On March 15, 2005, Plaintiff was seen by nursing staff when he complained of knee pain

for the first time and requested arch supports for his hip pain.  *Id*. at p. 68.  On examination,

Plaintiff was found to have a decreased range of motion in his hip, but his circulation was intact

and pulses were positive.  *Id*.  Based on the exam, Plaintiff was advised to perform range of

motion exercises and prescribed Indomethacin for pain.  *Id*. at p. 39.  In addition, orthopedic

insoles and an x-ray were ordered.  *Id*.  When the scheduled x-ray was performed on March 18,

2005, osteoarthritic changes were noted in Plaintiff's right knee as well as severe osteoarthritic

changes in his right hip joint due to his LCPD.  *Id*. at p. 103.  Progression of degenerative changes in Plaintiff's right femur head and neck were noted when the x-ray was compared to the earlier x-ray performed in 2003.  *Id*.  On April 4, 2005, Plaintiff was seen by a doctor as a follow up to the x-ray.  *Id*. at p. 13.  No changes were made to the treatment plan for Plaintiff's hip and his prescription for Indothemicin was renewed.  *Id*. at p. 39.  Plaintiff complained of extreme hip pain again on June 23, 2005, and requested to be seen by an outside doctor.  *Id*. at p. 70.  Plaintiff was seen by a physician assistant and advised that an evaluation by a doctor would be scheduled.  *Id*.

With respect to Plaintiff's sleep apnea, treatment has included a chest x-ray, an EKG and an evaluation by an Ear, Nose and Throat (ENT) specialist.  *Id*. at p. 29, 72, 100, and 106. Although the October 25, 2002, chest x-ray showed borderline cardiomegaly, possible chronic bronchitis, and interstitial lung disease, the x-ray was not diagnostic of those conditions; each would require clinical correlation, i.e., other symptoms, for a diagnosis.  *Id*. at p. 106; Paper No. 35 at pp. 10–11.  Defendants explain that borderline cardiomegaly (enlarged heart) is indicative of another underlying problem such as hypertension, a condition for which Plaintiff is being treated.  Paper No. 20 at Ex. 3.  Defendants further explain that there has been no clinical findings to support  Plaintiff's conclusion that he suffers from chronic bronchitis or interstitial lung disease.  Paper No. 35 at p. 10.  Later examinations of Plaintiff's lungs were clear and showed no evidence of disease.  Paper No. 20 at Ex. 1, pp. 3– 5; 10– 15; 17; and 73–75.

On October 31, 2002, Plaintiff was evaluated by an ENT specialist for sleep apnea.  *Id*. at p. 72.  Plaintiff reported having heavy sinus obstruction notwithstanding surgery he had undergone eight years previously to address the problem.  *Id*.  There were no abnormalities found by the doctor and it was recommended that Plaintiff sleep with his head elevated and that he lose

10

weight. *Id.* Plaintiff was placed on a cardiovascular diet in order to assist him in losing weight:

nonetheless, gained 27 pounds between October, 2002, and June, 2005. *Id.* at pp. 2 and 70. The

specialist also suggested that Plaintiff may benefit from the use of a CPAP machine while

sleeping. *Id.* Although efforts were made to obtain the machine for Plaintiff, it was never

provided. Defendants assert that use of the machine is no longer medically indicated inasmuch as

Plaintiff has gone many months without raising complaints related to his sleeping disorder. *Id.* at

Ex. 3.

Plaintiff takes issue with the course of treatment chosen to address the hip pain he

experiences, claiming that the pain has intensified, the medication provided is no longer effective,

and "something is wrong with his right hip which is either not showing up on conventional x-rays

or being minimized by the doctors." Paper No. 31 at p. 5. Plaintiff asserts that the continuation

of ineffective treatment that does nothing to alleviate intense pain is evidence of deliberate

indifference. *Id.* In addition, Plaintiff claims that he has received no treatment of the disorders

revealed by his chest x-ray or his EKG. *Id.* He further attributes the refusal to provide him with

additional treatment to cost-cutting measures by the medical care provider. *Id.* at p. 1.

A claim of deliberate indifference to a serious medical need may not be based on a

disagreement with medical opinion. *See Russell*, 528 F.2d at 319. To the extent that Plaintiff

suffers chronic pain, that pain is not the result of a refusal to provide medical care, nor is it the

result of medical care that is so grossly incompetent that it shocks the conscience. The lengthy

record in this case establishes that Defendants have treated Plaintiff for his numerous medical

complaints with diagnostic tests and medication for his pain. Plaintiff's suspicions that he suffers

from an unknown, undiagnosed malady that has not yet been discovered because of cost-cutting

measures are understandable given his circumstances, but simply are not evidence that the

treatment provided is constitutionally inadequate.  Accordingly, Defendants are entitled to

summary judgment in their favor.

A separate Order, dismissing all claims against Defendants Sizer, Kupec and Green, and

granting summary judgment in favor of all medical defendants, follows.


                                        /s/

__March 6, 2006                 _____
Date                            William M. Nickerson
                                Senior United States District Judge